John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

William "Billy" Peerce Howard (*pro hac vice* forthcoming)
**THE CONSUMER PROTECTION FIRM, PLLC**
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602
Telephone: 813-500-1500
billy@TheConsumerProtectionFirm.com

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THONG NGUYEN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>DISCORD INC.,<br>Defendant. | **Case No. 3:25-cv-08747**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Thong Nguyen individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against defendant Discord Inc. ("Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

1

**SUMMARY OF THE CASE**

2          1.      Plaintiff brings this class action against Defendant for its failure to properly secure

3   Plaintiff's and Class Members' personally identifiable information ("PII"). The PII may have included

4   victims' names, username, IP addresses, purchase history limited purchase history, limited billing

5   information such as payment type, last four digits of credit card.

6          2.      Defendant failed to comply with industry standards to protect information systems that

7   contain PII. Plaintiff seeks, among other things, orders requiring Defendant to fully and accurately

8   disclose the nature of the information that has been compromised and to adopt sufficient security

9   practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.[1]

10         3.      Defendant discovered a data breach on October 3, 2025, that had occurred exposing the

11  PII of millions of Defendant's U.S. consumers (the "Data Breach").

12         4.      Defendant knowingly obtained sensitive PII and had a resulting duty to securely

13  maintain that information in confidence. Plaintiff and Class Members would not have provided their

14  PII to Defendant if they had known that Defendant would not ensure that it used adequate security

15  measures.

16         5.      Plaintiff seeks to remedy these harms individually and on behalf of all other similarly

17  situated individuals whose PII was exposed in the Data Breach. Plaintiff seeks remedies including

18  compensation for time spent responding to the Data Breach and other types of harm, free credit

19  monitoring and identity theft insurance, and injunctive relief including substantial improvements to

20  Defendant's data security policies and practices.

21

**JURISDICTION AND VENUE**

22         6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

23  1332(d) because (a) the aggregate amount in controversy exceeds the sum or value of $5,000,000,

24  exclusive of interest and costs (b) the action is a class action (c) there are Class members who are

25  diverse from Defendant, and (d) there are more than 100 Class members.

26

27

28
_____
[1] https://hackread.com/discord-data-breach-hackers-ids-billing-support-chats/

CLASS ACTION COMPLAINT
2

7.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because Defendant resides in this District.

## PARTIES

9.     Plaintiff Thong Nguyen is a resident of Tampa, Florida, who had an account with Defendant and/or its affiliates.

10.     Defendant Discord Inc. is a Delaware corporation with its principal place of business located at 444 De Haro Street, Suite 200, San Francisco, California, 94107.

## FACTUAL ALLEGATIONS

### A.  Background on Defendant

11.     Defendant is a privately owned American communication and social media platform and accumulates highly private PII of its customers, which is used to engage in its business.

12.     Due to the nature of the services it provides, Defendant acquires and electronically stores PII. Defendant was therefore required to ensure that PII was not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent. Defendant's duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties, including in selecting its vendors, encrypting the information, and purging information of past customers.

13.     Upon information and belief, Defendant made promises and representations to its customers that PII collected from them, including that of Plaintiff and Class Members, would be kept save and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

### B.  The Data Breach

14.     On or about October 3, 2025, Defendant posted on its website notice of breach letters ("Notice Letter").  The Notice Letter states:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## WHAT HAPPENED?

At Discord, protecting the privacy and security of our users is a top priority. That's why it's important to us that we're transparent with them about events that impact their personal information.

Recently, we discovered an incident where an unauthorized party compromised one of Discord's third-party customer service providers. The unauthorized party then gained access to information from a limited number of users who had contacted Discord through our Customer Support and/or Trust & Safety teams.

As soon as we became aware of this attack, we took immediate steps to address the situation. This included revoking the customer support provider's access to our ticketing system, launching an internal investigation, engaging a leading computer forensics firm to support our investigation and remediation efforts, and engaging law enforcement.

We are in the process of contacting impacted users. If you were impacted, you will receive an email from *noreply@discord.com*. We will not contact you about this incident via phone – official Discord communications channels are limited to emails from *noreply@discord.com*.

15.    Omitted from the Notice Letter are the details of the root cause of the Data Breach, what was exploited, and the specific remedial measures undertaken to ensure such a reach do not occur again.  This disclosure fails to inform, Plaintiff and Class Members of the Data Breach's critical facts.

### C. Defendant's Security Representations

16.    Defendant was founded in May of 2015, and its industry is Software (VoIP communications, instant messaging, videoconferencing, content delivery and social media)

17.    Defendant's mission statement is to "create space for everyone to find belonging". Their vision is "an inclusive world where no one feels like an outsider.[2]

---

[2] https://discord.com/company

CLASS ACTION COMPLAINT
4

**D.  Data Breaches Are Preventable.**

18.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

19.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[3]

20.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

---

[3] How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[4]

21.     To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-     Apply latest security updates
-     Use threat and vulnerability management
-     Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-     Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-     Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-     Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-     Monitor for adversarial activities
-     Hunt for brute force attempts
-     Monitor for cleanup of Event Logs
-     Analyze logon events;

**Harden infrastructure**

-     Use Windows Defender Firewall
-     Enable tamper protection
-     Enable cloud-delivered protection

---

[4] *Id.* at 3-4.

CLASS ACTION COMPLAINT

6

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[5]

22.    Given that Defendant was storing the sensitive Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

23.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, thousands of individuals, including that of Plaintiff and Class Members.

**E. Defendant Acquires, Collects, and Stores Individuals' Private Information**

24.    As a condition of obtaining services from Defendant, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

25.    Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to carry out its regular business operations.

26.    By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

27.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

28.    Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members.

---

[5] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:*
https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

**F.  The Value of Private Information**

29.     In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[6]

30.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

31.     Stolen Private Information is often trafficked on the dark web, as is the case here. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

32.     When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[8]

33.     Another example is when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [Private Information] belonging to victims from countries all over the world. One of the key challenges of protecting Private Information online is its pervasiveness. As data breaches in the news continue to show, Private Information about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to

---

[6] https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/
[7] *See* https://www.cisa.gov/sites/default/files/2023-01-CISA_MSISAC_Ransomware%20Guide_8508C.pdf
[8] *Shining a Light on the Dark Web with Identity Monitoring, IdentityForce*, Dec. 28, 2020,
https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring

1  target."[9]

2      34.    The Private Information of consumers remains of high value to criminals, as evidenced

3  by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

4  identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200,

5  and bank details have a price range of $50 to $2009.[10] Experian reports that a stolen credit or debit

6  card number can sell for $5 to $110 on the dark web.[11] Criminals can also purchase access to entire

7  company data breaches.[12]

8      35.    Once Private Information is sold, it is often used to gain access to various areas of the

9  victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead

10 to additional Private Information being harvested from the victim, as well as Private Information from

11 family, friends and colleagues of the original victim.

12     36.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime

13 Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019,

14 resulting in more than $3.5 billion in losses to individuals and business victims.

15     37.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in

16 person or online, and/or experience financial losses resulting from fraudulently opened accounts or

17 misuse of existing accounts.

18     38.    Data breaches facilitate identity theft as hackers obtain consumers' Private Information

19 and thereafter use it to siphon money from current accounts, open new accounts in the names of their

20 victims, or sell consumers' Private Information to others who do the same.

21     39.    For example, the United States Government Accountability Office noted in a June 2007

22 report on data breaches (the "GAO Report") that criminals use Private Information to open financial

23

24

25 [9] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor, April 3, 2018, https://www.armor.com/resources/blog/stolen-pii- ramifications- identity-theft-fraud-dark-web/
26 [10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal- data-sold-on-the-dark-web- how-much-it-costs/
27 [11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is- selling-for-on-the-dark-web/
28 [12] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the- dark/

accounts, receive government benefits, and make purchases and secure credit in a victim's name.[13] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[14]

40.     The market for Private Information has continued unabated to the present, and in 2023 the number of reported data breaches in the United States increased by 78% over 2022, reaching 3205 data breaches.[15]

41.     The exposure of Plaintiff's and Class Members' Private Information to cybercriminals will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly sensitive information.

**G. Defendant Failed to Comply with FTC Guidelines**

42.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII/PHI.

43.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should: (i) protect the personal customer information that they keep; (ii) properly dispose of personal information that is no longer needed;  (iii) encrypt information stored on computer networks; (iv) understand their network's vulnerabilities; and (v) implement policies to correct security problems.

---

[13] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), https://www.gao.gov/assets/gao- 07-737.pdf
[14] *Id.*
[15] Beth Maundrill, *Data Privacy Week: US Data Breaches Surge, 2023 Sees 78% Increase in Compromises*, INFOSECURITY MAGAZINE (Jan. 23, 2024); https://www.infosecurity-magazine.com/news/us-data-breaches-surge-2023/ (last visited July 10, 2025); *see also* Identity Theft Resource Center, *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/ 2023-data-breach-report/

44. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

45. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**H. Defendant Failed to Follow Industry Standards**

48. Experts studying cybersecurity routinely identify companies such as Defendant's as being particularly vulnerable to cyberattacks because of the value of the PII/PHI which they collect and maintain.

49. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

50. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and

protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

51.     Moreover, companies should retain personal data only as necessary, with legal justification. Personal data should not be stored beyond the time necessary to achieve its initial purpose of collection. In line with industry standard practices, Defendant should have promptly deleted any data it no longer needed to provide products and/or services to Plaintiff and the Class.

52.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO04), which are established standards in reasonable cybersecurity readiness.

53.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**I.    The Data Breach Caused Injury to Class Members and Will Result in Additional Harm Such as Fraud.**

54.     Without detailed disclosure to the victims of the Data Breach, individuals whose Private Information was compromised by the Data Breach, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their Private Information for months without being able to take available precautions to prevent imminent harm.

55.     The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

56.     Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

57.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[17]

58.     Identity thieves can use Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

59.     As demonstrated herein, these and other instances of fraudulent misuse of the compromised Private Information has already occurred and are likely to continue.

60.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[18]

61.     The 2017 Identity Theft Resource Center survey[19] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;
- 67% reported anxiety;
- 66% reported feelings of fear related to personal financial safety;
- 37% reported fearing for the financial safety of family members;
- 24% reported fear for their physical safety;
- 15.2% reported a relationship ended or was severely and negatively impacted by

---

[16] 17 C.F.R. § 248.201 (2013).
[17] *Id*.
[18] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) http://www.bjs.gov/content/ pub/pdf/vit14.pdf
[19] *Id*.

identity theft; and

- 7% reported feeling suicidal.

62. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;

- 37.1% reported an inability to concentrate / lack of focus;

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[20]

63. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

64. Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

**J. Plaintiff and Class Members Suffered Damages.**

65. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent misuse of their Private Information, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory

---

[20] *Id.*

[21] GAO, *Report to Congressional Requesters*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited Oct. 1, 2025).

actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam email, text, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

66.    Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.  theft and misuse of their personal and financial information;

    b.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and misused via the sale of Plaintiff's and Class Members' information on the Internet's black market;

    c.  the untimely and inadequate notification of the Data Breach;

    d.  the improper disclosure of their Private Information;

    e.  loss of privacy;

    f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    g.  ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

    h.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach; and

i.    nominal damages.

67.    While Plaintiff's and Class Members' Private Information has been stolen, Defendant continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## CLASS ALLEGATIONS

68.    Plaintiff brings this class action individually on behalf of herself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) of the following Classes:

> **Nationwide Class**:
> All persons residing in the United States whose Private Information was compromised in the Data Breach.

69.    Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

70.    Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

71.    <u>Numerosity:</u> The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. Upon information and belief, Plaintiff believes the number of affected individuals is in the thousands.

72.    <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members'

1          Private Information from unauthorized access and disclosure;

2     c.    Whether Defendant's computer systems and data security practices used to

3          protect Plaintiff's and Class Members' Private Information violated the FTC

4          Act and/or state laws, and/or Defendant's other duties discussed herein;

5     d.    Whether Defendant failed to adequately respond to the Data Breach, including

6          failing to investigate it diligently and notify affected individuals in the most

7          expedient time possible and without unreasonable delay, and whether this

8          caused damages to Plaintiff and Class Members;

9     e.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class

10          Members' Private Information;

11     f.    Whether Defendant's data security systems prior to and during the Data Breach

12          complied with applicable data security laws and regulations;

13     g.    Whether Defendant's data security systems prior to and during the Data Breach

14          were consistent with industry standards;

15     h.    Whether Plaintiff and Class Members suffered injury as a proximate result of

16          Defendant's negligent actions or failures to act;

17     i.    Whether Defendant failed to exercise reasonable care to secure and safeguard

18          Plaintiff's and Class Members' Private Information;

19     j.    Whether Defendant breached duties to protect Plaintiff's and Class Members'

20          Private Information;

21     k.    Whether Defendant's actions and inactions alleged herein were negligent;

22     l.    Whether Defendant were unjustly enriched by their conduct as alleged herein;

23     m.    Whether Plaintiff and Class Members are entitled to additional credit or identity

24          monitoring and monetary relief; and

25     n.    Whether Plaintiff and Class Members are entitled to equitable relief, including

26          injunctive relief, restitution, disgorgement, and/or the establishment of a

27          constructive trust.

28

73.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

74.     <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

75.     <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

76.     <u>Superiority:</u> A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77.     <u>Injunctive and Declaratory Relief:</u> Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

78.     Likewise, particular issues are appropriate for certification under Rule 24(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information; (b) whether Defendant failed to adequately monitor and audit their data security systems; and (c) whether Defendant failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

79.     All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach.

**CAUSES OF ACTION**
**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth herein.

81.     Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' PII in Defendant's possession was adequately secured and protected, that Plaintiff's and Class Members' PII on Defendant's networks was not accessible to criminals without authorization, and that Defendant's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiff's and Class Members' PII.

82.     Plaintiff and Class Members entrusted their PII to Defendant with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

83.     Defendant knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiff's and Class Members' PII involved an unreasonable risk of harm to Plaintiff and Class Members.

84.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII.

85.     A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

86.     Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII, the critical importance of providing adequate security of that information, the necessity for encrypting PII stored on Defendant's systems, and that it had inadequate IT security protocols in place to secure Plaintiff's and Class Members' PII.

87.     Defendant's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

88.     Plaintiff and Class Members had no ability to protect their PII that was in Defendant's possession.

89.     Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

90.     Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

91.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

92.     Defendant systematically failed to provide adequate security for data in its possession.

93.     Defendant, through its actions and/or omissions, unlawfully breached its duty to

Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within its possession.

94.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

95.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within its possession might have been compromised and precisely the type of information compromised.

96.    Defendant breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

97.    But for all of Defendant's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiff's and Class Members' PII would not have been compromised.

98.    Plaintiff never transmitted her own unencrypted PII over the internet or any other unsecured source.

99.    Following the Data Breach, Plaintiff's PII has been seized by unauthorized third parties who are now free to exploit and misuse that PII, and Plaintiff is unable to prevent its further dissemination. Plaintiff's PII is forever compromised.

100.    But for the Data Breach, Plaintiff would not have incurred the loss and publication of her PII and other injuries.

101.    There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' PII and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members. Plaintiff's and Class Members' PII was accessed and compromised as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures and encryption.

102.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will

1   continue to incur such damages in addition to any fraudulent use of their PII.

2      103.   As a result of Defendant's negligence and breach of duties, Plaintiff and Class

3   Members are in danger of imminent harm in that their PII, which is still in the possession of third

4   parties, will be used for fraudulent purposes.

5      104.   Plaintiff seeks the award of actual damages on behalf of herself and the Class.

6      105.   Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1)

7   compelling Defendant to institute appropriate data collection and safeguarding methods and policies

8   with regard to PII; and (2) compelling Defendant to provide detailed and specific disclosure of what

9   types of PII have been compromised as a result of the data breach.

10                          **COUNT II**
                       **NEGLIGENCE *PER SE***
11                  **(On Behalf of Plaintiff and the Class)**

12     106.   Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth

13   herein.

14     107.   Pursuant to the FTC Act, Defendant was required by law to maintain adequate and

15   reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and

16   Class Members' PII.

17     108.   Defendant breached its duties by failing to employ industry standard data and

18   cybersecurity measures to ensure their compliance with that law, including, but not limited to, proper

19   segregation, access controls, password protection, encryption, intrusion detection, secure destruction

20   of unnecessary data, and penetration testing.

21     109.   It was reasonably foreseeable, particularly given the growing number of data breaches

22   of PII, that the failure to reasonably protect and secure Plaintiff's and Class Members' PII in

23   compliance with applicable laws would result in an unauthorized third-party gaining access to

24   Defendant's networks, databases, and computers that stored or contained Plaintiff's and Class

25   Members' PII.

26     110.   Defendant's violations of the FTC Act constitute negligence per se.

27

28

111.    Plaintiff and Class Members are within the category of persons the FTC Act was intended to protect.

112.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

113.    Plaintiff's and Class Members' PII constitutes personal property that was stolen due to Defendant's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

114.    Defendant's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted PII, and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiff and Class Members seek damages and other relief as a result of Defendant's negligence.

## COUNT III
## BREACH OF EXPRESS CONTRACT
### (On Behalf of Plaintiff and the Class)

115.    Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth herein.

116.    Plaintiff and Class Members entered into written agreements with Defendant in the course of financial services and related services Defendant provided to Plaintiff and Class Members. The agreements involved a mutual exchange of consideration whereby Defendant provided these services in exchange for payment from Class Members.

117.    Plaintiff and Class Members paid Defendant for its services and performed under these agreements.

118.    Defendant failure to protect Plaintiff's and Class Members' PII constitutes a material breach of the terms of these agreements by Defendant.

119.    As a direct and proximate result of Defendant's breaches of express contract, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## <u>COUNT IV</u>
## BREACH OF EXPRESS CONTRACT
### (On Behalf of Plaintiff and the Class)

120.    Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth herein.

121.    When Plaintiff and Class Members provided their PII to Defendant, they entered into implied contracts with Defendant, under which Defendant agreed to take reasonable steps to protect Plaintiff's and Class Members' PII, comply with its statutory and common law duties to protect Plaintiff's and Class Members' PII, and to timely notify them in the event of a data breach.

122.    Defendant solicited and invited Plaintiff and Class Members to provide their PII as part of Defendant provision of financial services and related services. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

123.    When entering into implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

124.    Defendant's implied promise to safeguard PII is evidenced by, *e.g.*, the representations in its privacy policies set forth above.

125.    Plaintiff and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

126.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

127.    Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

128.    The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

  a.    Theft of their PII;

b.   Costs associated with purchasing credit monitoring and identity theft protection services;

c.   Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i.   Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

129.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth herein.

131.    Plaintiff and Class Members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was stolen in the Data Breach.

132.    Defendant benefitted from the conferral upon it of Plaintiff's and Class Members' PII, and by its ability to retain and use that information. Defendant understood that it so benefitted.

133.    Defendant also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential and that its value depended upon Defendant maintaining its privacy and confidentiality.

134.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Defendant. Further, if Defendant had disclosed that its data security measures were inadequate, Defendant would not have been permitted to continue in operation by regulators and the financial marketplace.

135.    As a result of Defendant's wrongful conduct as alleged in this Complaint (including, among other things, their failure to employ adequate data security measures, their continued maintenance and use of Plaintiff's and Class Members' PII without having adequate data security measures, and its other conduct facilitating the theft of that PII), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

136.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

137.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' PII in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

138.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

### COUNT VI
### INJUNCTIVE/DECLARATORY RELIEF
### (On Behalf of Plaintiff and the Class)

139.    Plaintiff restates and realleges paragraphs 1 through 79, above as if fully set forth herein.

140.    Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII.

141.    Defendant still stores Plaintiff's and Class Members' PII.

142.    Since the Data Breach, Defendant has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

143.    Defendant has not satisfied its legal duties to Plaintiff and Class Members.

144.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII, and Defendant's failure to address the security failings that led to that exposure.

145.    Plaintiff, therefore, seeks a declaration: (a) that Defendant's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

a.  ordering that Defendant engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

d.  ordering that Defendant segment PII by, among other things, creating firewalls and access controls so that if one area of Defendant's system is compromised, hackers cannot gain access to other portions of Defendant's system;

e.  ordering that Defendant purge, delete, and destroy in a reasonably secure manner PII not necessary for its provision of services;

f.  ordering that Defendant conduct regular computer system scanning and security checks; and

g.  ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.  for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b.  for equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.   for equitable relief compelling Defendant to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d.   for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.   for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.   for prejudgment interest on all amounts awarded; and

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: October 13, 2025                          Respectfully submitted,

                                                 */s/ John J. Nelson*
                                                 John J. Nelson (SBN 317598)
                                                 **MILBERG COLEMAN BRYSON**
                                                 **PHILLIPS GROSSMAN, PLLC**
                                                 280 S. Beverly Drive, Penthouse
                                                 Beverly Hills, CA 90212
                                                 Tel.: (858) 209-6941
                                                 jnelson@milberg.com

                                                 William "Billy" Peerce Howard*
                                                 **THE CONSUMER PROTECTION FIRM,**
                                                 **PLLC**
                                                 401 East Jackson Street, Suite 2340
                                                 Truist Place
                                                 Tampa, FL 33602
                                                 Telephone: 813-500-1500
                                                 billy@TheConsumerProtectionFirm.com

                                                 *Pro Hac Vice forthcoming*

                                                 *Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
29